IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 07-cv-00842-CMA-CBS

PLATTE RIVER INDUSTRIES, INC., a Colorado nonprofit corporation,

    Plaintiff,

v.

COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED, an agency of the United States of America,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Plaintiff Platte River Industries, Inc.'s ("PRI") Complaint (Doc. # 1), filed pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, challenging, as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," Defendant Committee for Purchase from People Who Are Blind or Severely Disabled's ("Committee") final decision regarding a price impasse dispute between PRI and the General Services Administration ("GSA"). After consideration of Plaintiff's Opening Brief (Doc. # 29), Defendant's Response (Doc. # 34), Plaintiff's Reply (Doc. # 36), and the administrative record, and for the reasons discussed below, the Committee's pricing determination is AFFIRMED.

# I. BACKGROUND[1]

PRI is a nonprofit corporation in Denver, Colorado, that provides employment opportunities for disabled persons by contracting with governmental agencies pursuant to the Javits-Wagner-O'Day Act ("JWOD"), 41 U.S.C.A. § 46-48c, and the McNamara-O'Hara Service Contract Act ("SCA"), 41 U.S.C. § 351. JWOD established a government policy of promoting employment and training opportunities for blind or otherwise severely-disabled Americans through the purchase of goods and services produced by such persons. 41 C.F.R. § 51-1.1. The SCA requires contractors and subcontractors who enter into government service contracts in excess of $2,500 to pay minimum wage rates and fringe benefits as determined by either the Department of Labor or by a collective bargaining agreement. 41 U.S.C. § 351.

The Committee is an independent federal agency charged with implementing and administering JWOD. *See* 41 U.S.C.A. § 46. Among other duties, the Committee (1) establishes a procurement list of goods and services created or provided by the blind or severely disabled that are suitable for procurement by the Government, and (2) sets the base fair market price for the goods and services in question, revising prices as market conditions change. 41 U.S.C.A. § 47 (a)-(b); 41 C.F.R. § 51-2.2(b)-(c).

---

[1] Unless otherwise noted, the following facts are taken from the parties' briefs, attached exhibits, and administrative record, and the facts are not in dispute.

GSA is a federal entity responsible for obtaining goods or services from and negotiating contracts with nonprofit agencies under the JWOD program. (Operations Mem. No. 19 at 1, 3, AR-0001, -0003.)

In 1995, PRI assumed a pre-existing contract (the "Pre-Existing Contract") with GSA to provide janitorial services for the Cesar Chavez federal building in Denver, Colorado ("Chavez building"). The price for services rendered was based on a price per square foot. The original pricing agreement expired in 1999, and in 2001, GSA awarded PRI a new pricing agreement at $1.13 per square foot. When that agreement expired in 2005, GSA and PRI entered into a one-year base price agreement and subsequent short-term price agreements. The price paid per square foot increased over the course of the contract, largely to address increases in labor costs. Prior to the current dispute, the last price agreement between GSA and PRI was for $1.82 per square foot.

In 2006, when PRI and GSA entered into negotiations for a new, multi-year contract, PRI proposed a price of $2.40 per square foot to cover increases in the Department of Labor-mandated minimum wage and benefit rates. GSA rejected PRI's proposal on grounds that it exceeded the fair market price of $1.22 per square foot for similar janitorial services in the region. To arrive at this fair market assessment, GSA reviewed prices for at least five recently-awarded government contracts and three commercial contracts for janitorial services in buildings similar to the Chavez building, as well as a published index of industry rates. Given the disparity between the parties'

proposed prices, PRI declared a price impasse and so notified the Committee on October 31, 2006.

Pursuant to its impasse resolution procedures, the Committee asked both PRI and GSA first to provide a business case in support of their proposed prices, and subsequently to provide supplemental information. The parties complied with all requests. On February 1, 2007, after reviewing the information provided by the parties, the Committee staff issued a decision letter setting the fair market price for the contract at $1.28 per square foot ("the Committee Staff's Decision"). PRI appealed the decision and requested the opportunity to orally present its case to the Committee. The full Committee denied PRI's request for an oral presentation, and, on April 5, 2007, issued a letter sustaining the original decision of the Committee staff ("the Full Committee's Decision").

PRI subsequently filed its Complaint with this Court, asking the Court (1) to declare that the fair market value as determined by the Committee is void, (2) to restrain the Committee from reassigning the Chavez building contract until the impasse may be resolved, and (3) to enjoin the Committee to set the price for the Chavez contract at either current compensation levels or $1.95 per square foot until such time as the impasse is resolved, or alternatively, to award a fair market price for the janitorial services at issue.

## II. STANDARD OF REVIEW

Under the APA, courts must defer to a federal agency's judgment and may set aside the agency's decision only if it is arbitrary, capricious, or otherwise not supported by law. 5 U.S.C.A. § 706 (2)(A); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. ----, 129 S.Ct. 1800, 1810, 173 L. Ed. 2d 738 (2009). An agency decision is arbitrary or capricious if the agency

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L. Ed. 2d 443 (1983). The scope of this review is narrow, and does not allow the court to substitute its judgment for that of the agency in question. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed. 2d 136, (1971), *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L. Ed.2d 192 (1977). The court may only review whether the agency in question examined relevant data and produced a "satisfactory explanation for its decision, including a rational connection between the facts found and the decision made." *Colorado Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006). Moreover, the court will uphold decisions of "less than ideal clarity" if it can discern a rational basis therefor, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658, 127 S.Ct. 2518, 168 L. Ed. 2d 467 (2007) (quoting *Bowman Transp.,*

*Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S. Ct. 438, 42 L.Ed. 2d 447 (1974)), and if the record contains grounds for the Committee's decision. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994).

## III. DISCUSSION

### A. RELEVANT COMMITTEE REGULATIONS

The Committee's Pricing Memorandum No. 3 mandates that the preferred method for determining fair market price is price analysis:

> Price analysis is the preferred method of evaluating proposals under the JWOD Program. Price analysis is the process of examining and evaluating a proposed price without evaluating its separate cost elements and proposed Net Proceeds. The expectation is that the frank exchange of ideas and information permitted under the JWOD Program, fostered through partnering, will result in a determination of price reasonableness using price analysis alone.

(Pricing Mem. No. 3 at 9, AR-0016.) Methods of price analysis include, among others, comparison of the proposed prices with (1) prices proposed and awarded for comparable services, and (2) published market prices or similar indexes. (*Id.* at 9-10, AR-0016-17.) Only "[i]n those limited instances" when price analysis alone is inconclusive may the contracting parties use other methods, namely, cost analysis or cost realism. (*Id.* at 10, AR-0017.)

At the outset of a multi-year contract, the Committee is responsible for setting the base fair market price, which must align with then-current market conditions. The contracting parties are free to determine the method for calculating changes in price over the follow-on years, subject to the Committee's approval. (*Id.* at 12, AR-0019.)

6

**B.    THE BASIS FOR THE COMMITTEE'S DECISION**

PRI alleges that the Committee failed to state adequately the basis for its decision. Although the Committee Staff's Decision and the Full Committee's Decision may have been somewhat uninformative, the administrative record demonstrates that the Committee considered relevant data and its pricing determination was rationally based.

A document created by the Committee on March 16, 2007, details the Committee's decision-making process. (AR-0041-45.) After reviewing the materials submitted by each party, the Committee adopted GSA's price analysis based on past contract prices and published market prices. (AR-0043.) The Committee rejected PRI's exclusive reliance on costs. (*Id.*) Upon PRI's appeal and request for an oral presentation, the Committee reviewed its previous price analysis and affirmed its pricing decision. (AR-0044.) Further, the Committee denied PRI's request to present its case orally. Oral arguments are permitted at the Committee's discretion. *See* 41 C.F.R. §§ 51-2.9(a), 51-6.15; see also Operations Mem. No. 19 (AR-0001-0007). In the instant dispute, the Committee determined that oral presentation was unnecessary and would hinder quick resolution of the impasse. (AR-0044.) Finally, although some question exists as to the accuracy of the published market prices presented by GSA, the Committee did not rely solely on those prices. Rather, it considered all pricing information contained in the business cases. (AR-0044.)

In sum, the Committee considered all the data presented and reached a conclusion rationally connected to the facts that each party provided. While the Committee's Staff Decision and Full Committee's Decision may not have been paragons of clarity, they were not arbitrary or capricious.

C.     **NISH'S RECOMMENDATION**

PRI also asserts that the Committee impermissibly ignored the recommendations of NISH, despite NISH's mandated role in facilitating the procurement of contracts.[2] Again, the record does not support this assertion.

In pertinent part, NISH questioned the reliability of the published data on which GSA relied in its price analysis, and recommended that the Committee allow PRI to present its case orally. The Committee did not ignore NISH's recommendations. Rather, it explained why the Committee did not agree with it: first, the data on which GSA relied was an accepted source of data, and did not provide the only basis for the Committee's decision; and second, the impasse resolution process did not allow for a party to appear before the Committee after both sides had been given equal opportunity to present their business cases. (AR-0044.) Therefore, the Committee did not ignore NISH's recommendations, but simply disagreed with them.[3]

---

[2] NISH is the central nonprofit agency that the Committee has designated to facilitate the distribution of procurement orders, pursuant to 41 U.S.C.A. § 47(c). As represented by Operations Memorandum No. 19, NISH is not an acronym. (AR-0002.)

[3] Pursuant to 41 C.F.R. § 51-3.2(i), one of NISH's responsibilities is to recommend general market-based price changes for commodities or services on the procurement list. However, NISH's actions in PRI's appeal do not fall under this responsibility. It simply intervened in a specific price impasse. Therefore, the Committee's disagreement with NISH's recommendations was not contrary to its published regulations.

### D.     CONSIDERATION OF FACTORS CONTRIBUTING TO THE IMPASSE

PRI also asserts that the Committee's decision violated the APA because the Committee failed to consider important factors that contributed to the impasse. (Doc. # 29 at 12.) Specifically, PRI argues that the Committee should have considered: (1) the increase in minimum wage and benefit rates since 2001, (2) the yearly increases in price per square foot over the duration of the Pre-Existing Contract, and (3) the impact that the Committee's decision would have on the disabled persons employed through the contract. (*Id.* at 12-13.)

The record does not support PRI's assertions. Increases in minimum wage and benefit rates are cost elements, not price elements, and the preferred method is price analysis. If the Committee had considered cost without performing price analysis, as PRI wanted, it would have acted counter to its own regulations.

Second, the Committee properly disregarded the increases in price per square foot that took place over the duration of the Pre-Existing Contract. At the outset of negotiations for a multi-year contract, as in the instant case, "both parties . . . must realign the price to reflect the **current** market conditions. This prevents the price from escalating beyond the point of reasonableness." (AR-0051 (emphasis in the original).) Therefore, in conducting its own pricing determinations, the Committee properly reduced the recommended price to match then-current market conditions and lower prices.

Third, the Committee did consider the impact its pricing decision would have on PRI's employees. In fact, the Committee's decision was not a mandate that PRI and GSA enter into a service contract. Both parties were free to walk away. Indeed, the Committee offered to identify another nonprofit service provider or allow GSA to contract with a commercial provider. (AR-0031.)

In sum, the Committee considered all important factors contributing to the impasse.

## IV. CONCLUSION

Having reviewed the plaintiff's arguments and the administrative record, the Court finds that the Committee reviewed the relevant data and reached a decision that was rationally connected to the facts. The Committee's decision was not arbitrary, capricious, or otherwise contrary to law. While the Committee's decision letters may not have been paragons of clarity, the record allows the Court to discern the agency's path. Accordingly, it is

ORDERED that the Committee's April 5, 2007 decision resolving the price impasse between PRI and GSA is AFFIRMED. It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

DATED: March __16__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge